IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                                                  No.  04-40003-01-SAC

TERRY L. CORBER,

           Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's motion for new trial. (Dk. 50). After deliberating less than two hours, the jury on December 13, 2004, found the defendant guilty of the single count indictment which charged him with distributing cocaine base on February 20, 2003. The defendant timely filed his motion for new trial pursuant to Fed. R. Crim. P. 33 arguing error in that the jury was denied the opportunity to determine whether he was entrapped. Because the defendant was not prevented from introducing any evidence at trial on the issue of entrapment, the court assumes the defendant's dispute is with the court's ruling that denied him an instruction on entrapment. In its response opposing a new trial, the government gives a similar construction to the defendant's motion.

A court may grant the defendant a new trial "if the interest of justice so

requires." Fed. R. Crim. P. 33.  In deciding a motion for new trial, the court is afforded discretion and is free to weigh the evidence and assess witness credibility, but the court should regard such motions with disfavor and grant only with great caution. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999), *cert. denied*, 529 U.S. 1029 (2000).  The court should grant a new trial if there has been "any error of sufficient magnitude to require reversal on appeal." *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (quotation and citation omitted), *aff'd*, 28 Fed. Appx. 902 (10th Cir. 2001).  Jury instructions should address the issues raised by the evidence and state the law correctly, and "[a] new trial is warranted only when a failure to give an instruction is prejudicial in view of the entire record." *United States v. Pickard*, 278 F. Supp. 2d 1217, 1242 (D. Kan. 2003) (citing *United States v. Martin*, 18 F.3d 1515, 1519 (10th Cir.), *cert. denied*, 513 U.S. 868 (1994)).  The burden of proving the necessity of a new trial rests with the defendant.  *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994); *United States v. Walters*, 89 F. Supp. 2d at 1213.

"'A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis.'" *United States v. Beers*, 189 F.3d 1297, 1300 (10th Cir. 1999) (quoting *United States v. Bryant*, 892 F.2d 1466, 1468 (10th Cir. 1989), *cert. denied*, 496 U.S. 939 (1990)), *cert. denied*, 529 U.S. 1077 (2000).  In other words,

a defendant is "entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States*, 485 U.S. 58, 62 (1988). "The defendant must show, either by presenting his own evidence or by pointing to evidence presented by the government in its case-in-chief, his lack of predisposition to commit the crime and 'government involvement and inducement.'" *United States v. Scull*, 321 F.3d 1270, 1275 (10th Cir.) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164-65 (10th Cir. 1986)), *cert. denied*, 540 U.S. 864 (2003). A defendant is entitled to an entrapment instruction "'only if he can identify evidence from which a reasonable juror could derive a reasonable doubt as to the origin of criminal intent . . . .'" *United States v. Monholland*, 232 F.3d 903, 2000 WL 1480397, at *2 (10th Cir. 2000) (Table) (quoting *United States v. Ortiz*, 804 F.2d at 1165). In deciding whether the evidence is sufficient to create a jury issue, the court accepts the testimony most favorable to the defendant. *United States v. Scull*, 321 F.3d at 1275.

"'Inducement' is 'government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense.'" *United States v. Scull*, 321 F.3d at 1275 (quoting *United States v. Ortiz*, 804 F.2d at 1165). Inducement may include: "'persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas

3

based on need, sympathy or friendship.'" *United States v. Ortiz*, 804 F.2d at 1165 (quoting *United States v. Burkley*, 591 F.2d 903, 913 & n.18 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 966 (1979)).  The mere solicitation, request or offer to engage in criminal activity does not amount to entrapment.  *United States v. Scull*, 321 F.3d at 1275.  "[T]hat the government agent initiated the contact with the defendant or proposed the crime" also is not enough evidence for entrapment.  *United States v. Ortiz*, 804 F.2d at 1165 (citation omitted).

"The focal point in entrapment, . . ., centers on the defendant's intent or predisposition to engage in the offense rather than the degree of government involvement."  *United States v. Mendoza-Salgado*, 964 F.2d 993, 1002 (10th Cir. 1992) (citations omitted).  "'Predisposition' is defined 'as a defendant's inclination to engage in the illegal activity for which he has been charged . . . [and] focuses on the defendant's state of mind before government agents suggest that he commit a crime.'"  *United States v. Scull*, 321 F.3d at 1276 (quoting *United States v. Ortiz*, 804 F.2d at 1165).  Predisposition may by proved by the defendant's prior involvement in the same type of criminal activity or "may be inferred from 'defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's . . . offer, or his demonstrated knowledge or experience in the criminal activity under investigation.'"  *United States v. Mendoza-*

*Salgado*, 964 F.2d at 1002-03 (quoting *United States v. Fadel*, 844 F.2d 1425, 1433 (10th Cir. 1988)).

The defendant Corber argues his testimony establishes that Ed Radford, the government's informant, had telephoned Corber's residence several times requesting drugs and that Corber either didn't talk to Radford or told Radford that he didn't have drugs.  The defendant also points to his testimony that he would not have delivered drugs to Ed Radford on behalf of his friend, Larry White, if Ed Radford had not telephoned him on prior occasions.  The defendant also points to his testimony about Radford's telephone calls for drugs following the transaction in question and about how the defendant responded to those telephone calls on one occasion by selling Radford crushed "No-Doz" tablets and on another occasion by stealing the buy money supplied by Radford.

"To establish a triable [entrapment] issue, the defendant must point to evidence that is more than 'flimsy or insubstantial.'"  *United States v. Ortiz*, 804 F.2d at 1165 (quoting *United States v. Nations*, 764 F.2d 1073, 1080 (5th Cir. 1985)).  As summarized in the prior paragraph, the defendant Corber's arguments for an entrapment instruction rely on insubstantial evidence and untenable or immaterial inferences.  The defendant's own testimony about the drug transaction that occurred on February 20, 2003, for which he was charged and tried precludes

any reasonable argument for an entrapment instruction.

From the witness stand, the defendant described the events on February 20, 2003, as follows. Ed Radford telephoned Corber on the evening of February 20th saying he had $400 with which to purchase some crack cocaine. Instead of telling Radford that he was not interested in selling any drugs, Corber expressed his assent to a transaction. (Dk. 51, Ex. to Govt's Response, Trans. Defendant's Testimony, pp. 15-16, 48-49, 54). The defendant told the jury, however, that he didn't have any crack cocaine to sell Ed Radford, that he told his uncle about Radford's inquiry, and that his uncle called a mutual friend, Larry White, who did have crack cocaine for sale. (Trans. pp. 16, 55). Larry White then came to Corber's residence, and the defendant agreed to show White where Ed Radford lived. (Trans. pp. 16-17, 55). When Corber and White arrived at the Radford's residence about an hour after Radford's call to Corber, White asked the defendant to deliver the crack cocaine to Ed Radford. Corber asked White, "what do I get out of the deal?" (Trans. pp. 54-55). White offered the defendant a small package of methamphetamine, and the defendant accepted the methamphetamine as payment and hand-delivered the cocaine to Ed Radford. (Trans. pp. 18, 53). While Corber was inside Radford's residence, Corber gave Radford the methamphetamine as Radford said the cocaine was light, and Corber also took an

additional twenty dollars from Radford for the methamphetamine. (Trans. pp. 20-21). In addition, Corber answered some of Radford's questions about the cost of other amounts of drugs and told Radford that he had some anhydrous methamphetamine for sale. (Trans. pp. 62-63).

On the element of inducement, the defendant's only evidence is his own conclusory and self-serving testimony[1] that the combination of Ed Radford's telephone calls prior to February 20th and Radford's relationship with Corber's family influenced his decision to help Larry White deliver the cocaine to Radford on February 20th. (Trans. pp. 58-59). Such testimony is conclusory, inconsequential, and implausible in light of the defendant's other testimony on this same point. When examined about the factors leading to his decision to participate in this transaction, the defendant was asked the open-ended question of what other

---

[1] Other than to mention that Radford had called several times, Corber did not mention anything about the circumstances of those telephone calls to indicate they were harassing, intimidating, coercive or persuasive. As he admitted, Corber had no difficulty declining Radford's earlier requests to buy drugs and on the night of February 20th had no intention of hand-delivering the drugs. Corber himself testified that he took the cocaine to Radford only after he asked for and received payment from his friend White. As for the prior relationship between Radford and Corber, there is nothing of record to suggest it was particularly close or trusting such that Corber could be induced to commit an act for which he lacked predisposition. If anything, the record shows the relationship was strained and marked by mutual distrust as evidenced by Radford stealing Corber's personal belongings and Corber then selling Radford fake drugs and later stealing some buy money.

factors besides the obvious risks and rewards played a part in his decision, and the defendant mentioned only his friendship with Larry White. (Trans. p. 47). "I never intended to go in the [Radfords'] house, to take the crack cocaine in to him or nothing, it was something that came along with riding with him [Larry White]." (Trans. p. 55). Corber described it as a pre-arranged deal between Radford and White into which he simply fell. (Tran. pp. 49-50). Corber further admitted during cross-examination that Radford on February 20th did not "beg," "harass," "threaten," "coerce," or "persuade" him into selling the drugs. (Trans. 56-57). Corber repeatedly testified that his friendship with White caused him to ride along on February 20th and that when asked to take the cocaine inside to Ed Radford, he did so only after asking and receiving some compensation from White. No reasonable jury could find from such testimony that there was a reasonable doubt as to whether the defendant was induced to distribute cocaine to Ed Radford on February 20th.

Having failed to come forth with enough evidence of inducement to justify an entrapment instruction, the court will not consider whether the defendant submitted sufficient evidence on lack of predisposition. *United States v. Banuelos*, --- Fed. Appx. ---, 2004 WL 2850085 at *4 n. 5 (10th Cir. Dec. 13, 2004). The defendant has not carried his burden of showing the necessity of a new

trial.

IT IS THEREFORE ORDERED that the defendant's motion for new trial (Dk. 50) is denied.

Dated this 27th day of January, 2005, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge